UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE SMOCK, an individual,

       Plaintiff,                         Case No. 1:12-cv-____

vs.

                                             **COMPLAINT**

OAKLAWN HOSPITAL, a
corporation,

       Defendant.

_____

William F. Piper (P38636)
William F. Piper, P.L.C.
Attorney for Plaintiff
1611 West Centre Avenue, Suite 209
Portage, MI 49024
Phone: 269.321.5008
Fax: 269.321.5009

_____

The plaintiff  Michelle Smock, by and through her attorney William F. Piper, PLC., for her complaint, states as follows:

## JURISDICTIONAL ALLEGATIONS

1.      The plaintiff Michelle Smock is an individual who resided in the County of Calhoun, State of Michigan, at all times relevant to this complaint.

2.      The defendant Oaklawn Hospital is a corporation that did business in the County of Calhoun, State of Michigan, at all times relevant to this complaint.

3.      This lawsuit arises out of the plaintiff's employment by the defendant, its refusal to accommodate her after a work related injury from which she needed to heal by putting her in a

light duty position or putting her on a leave of absence instead of terminating her employment on November 24, 2010, and its refusal to rehire her after she was released to return to work.

4.     This lawsuit arises in part under the Americans With Disabilities Act, 42 U.S.C. § 12101 et. seq. and 42 U.S.C. § 1981a.

5.     Jurisdiction arises under 28 U.S.C. § 1331, § 1337.

6.     The Equal Employment Opportunity Commission issued Ms. Smock a Right to Sue Letter dated July 25, 2012.

## COMMON ALLEGATIONS

7.     The plaintiff restates and realleges as though fully set forth herein paragraphs 1 – 6 of this complaint.

8.     The defendant hired Ms. Smock to work for it on May 6, 2006 as a labor and delivery nurse, and she did a good job for it thereafter.

9.     On August 27, 2010 Ms. Smock suffered a torn labrum and other injuries at work while lifting.

10.     Ms. Smock filed a worker's disability compensation claim, and the claim was granted.

11.     Ms. Smock also filed for a leave under the Family and Medical Leave Act.

12.     Ms. Smock's physician released her to return to work with a lifting restriction, but the defendant refused to allow Ms. Smock to perform her job or any other job within her restrictions.

13.     The defendant could have accommodated Ms. Smock's restrictions.

14.     The defendant had previously accommodated other injured workers by giving them light duty work within their restrictions.

2

15.     Ms. Smock moved up her surgery date to December 2, 2010 in order to appease the defendant.

16.     Ms. Smock gave the defendant a doctor's note indicating that she would likely be able to return to work by March 15, 2011.

17.     On January 4, 2011 the defendant gave Ms. Smock an administrative separation from employment, indicating to her that it could not hold her job anymore, even though it had given others lengthy leave of absences.

18.     The defendant indicated to Ms. Smock that she would be rehired after she was released to work without restrictions.

19.     Ms. Smock's physicians, in order to be confident that Ms. Smock was fully healed, waited to May 11, 2011 to release Ms. Smock to return to work.

20.     Ms. Smock contacted the defendant repeatedly by e-mail and by telephone to express her interest in returning to work.

21.     Ms. Smock, in fact, applied for numerous part-time and full-time positions with Oaklawn Hospital, including, but not limited to, the following:

    A.     Several OBGYN labor and delivery nurse positions;

    B.     Oncology nurse;

    C.     Medical surgical nurse;

    D.     Psychiatric nurse;

    E.     Home care nurse;

    F.     Emergency room nurse;

    G.     Casual nurse;

    H.     Registered Nurse.

22.     The defendant hired numerous other individuals for the nursing positions for which Ms. Smock applied, including students and others without Ms. Smock's experience and demonstrated competence at Oaklawn Hospital.

23.     Ms. Smock kept applying for jobs with with the defendant, but the defendant would not even give Ms. Smock an interview for any of the positions.

24.     Finally, a Human Resources representative of the defendant told Ms. Smock that she should stop applying, as she would not be hired.

25.     As a result of the unlawful actions described above, the plaintiff Michelle Smock has suffered and will continue to suffer a loss of income ands benefits, emotional distress, humiliation, anxiety, anger, a loss of enjoyment of life, and other damages.

## COUNT I – DISABILITY DISCRIMINATION AND REFUSAL TO ACCOMMODATE

26.     The plaintiff restates and realleges as though fully set forth herein paragraphs 1 – 25 of this complaint.

27.     The plaintiff Michelle Smock, in 2010 and early 2011, had a disability – a shoulder problem – that substantially affected major life activities of lifting and working, but it was unrelated to her ability to do her job with accommodations.

28.     The defendant refused to accommodate Ms. Smock's disability by refusing to allow her to work on light duty with a lifting restriction in order to preserve her job, even though it had done so with other employees.

29.     The defendant also refused to accommodate Ms. Smock's disability by refusing to place her on an extended leave of absence rather than terminating her employment, even though it had done so with other employees.

30.     The defendant terminated Ms. Smock in whole or in part in late December 2010 or early January 2011 because of Ms. Smock's disability.

31.     The defendant refused to take Ms. Smock back to work until she was released to work without any restrictions.

32.     Alternatively, the defendant terminated Ms. Smock's employment because it regarded her as disabled, and because of her record of having a disability, or both.

33.     In 2011 and afterwards, the defendant refused to rehire Ms. Smock in part because it regarded her as disabled, or because of her record of having had a disability, or both.

34.     The defendant refused to rehire Ms. Smock because of fear of future worker's compensation claims.

35.     The unlawful actions of the defendant described above constitute disability discrimination.

36.     As a result of the unlawful acts of the defendant described above, the plaintiff Michelle Smock suffered and will continue to suffer the damages set forth above.

37.     These claims are actionable under the Americans With Disabilities Act, 42 U.S.C. § 12101 et. seq. and 42 U.S.C. § 1981a and under the Persons With Disabilities Act, MCL 37.1101 et. seq.

WHEREFORE, the plaintiff  Michelle Smock requests a judgment against the defendant that would include equitable relief, including reinstatement or front pay; appropriate legal relief, including compensation for her loss of income and benefits; compensation for all intangible damages she suffered and will continue to suffer, punitive damages, and all recoverable interest, costs, attorney's fees ands any other relief this court deems fair and just.

## COUNT II – WORKER'S COMPENSATION RETALIATION

38.     The plaintiff restates and realleges as though fully set forth herein paragraphs 1 –
37 of this complaint.

39.     The defendant terminated Ms. Smock's employment and refused to rehire her at
least in part because she was injured and filed a worker's compensation complaint.

40.     As a result of the defendant's unlawful conduct, Ms. Smock suffered the damages
set forth above.

41.     This claim is actionable under MCL 418.301(11) and the common law.

WHEREFORE, the plaintiff  Michelle Smock requests a judgment against the defendant
that would include equitable relief, including reinstatement or front pay, appropriate legal relief,
including compensation for her loss of income and benefits; compensation for all intangible
damages she suffered and will continue to suffer, and all recoverable interest, costs, attorney's
fees and any other relief this court deems fair and just.

Dated: October 10, 2012                      WILLIAM F. PIPER, PLC.
                                             Attorney for Plaintiff


                                             By:     /s/ William F. Piper
                                                     William F. Piper (P38636)
                                             BUSINESS ADDRESS:
                                                     1611 West Centre Ave., Suite 209
                                                     Portage, Michigan 49024
                                                     Phone: 269.321.5008
                                                     Fax: 269.321.5009